### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **Chapter 7** |
| **BRADLEY VAUGHN HAUSER ,** | ) | |
| | ) | **Bankruptcy No. 11-02640** |
| Debtor. | ) | |
| | ) | |

### ORDER RE: MOTION TO CONSOLIDATE CASES (Doc. #43)

This matter is before the Court on Debtor's Motion to Consolidate Cases.

The Court heard the Motion on May 11, 2012.  David Nadler appeared on behalf of

the Debtor.   Wesley Huisinga appeared on behalf of First Federal Credit Union

("First Federal").  Stephanie Hinz appeared on behalf of Ford Motor Credit

Company, LLC ("Ford").  Laura Elizabeth Seaton appeared on behalf of the

Chapter 7 Trustee, Renee Hanrahan.  The Court took the matter under advisement.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

### STATEMENT OF THE CASE

Bradley Vaughn Hauser filed for Chapter 7 bankruptcy protection.  Since

filing, two associated adversaries have also been filed: (1) First Federal Credit

Union v. Hauser, 12-09009 (the "First Federal Adversary"); and (2) Hanrahan v.

Ford Motor Credit Company, LLC, 12-09017 (the "Ford Adversary").  On

February 23, 2012, the Trustee filed an Objection to Debtor's Claim of Exemption

in the main bankruptcy.   Debtor now seeks to consolidate that claim with the two

1

adversaries.  First Federal and Ford both object to consolidation of the actions.

The Court finds that in the interest of justice and efficiency the matters should be

consolidated.

## BACKGROUND

Debtor filed a Chapter 7 voluntary petition on November 29, 2011.

Schedule B lists assets including a 2005 Ford F150 valued at $15,925.00.  His

original Schedule C listed $7,000 of the value of the F150 as exempt.  Schedule D

listed Ford Credit as a creditor and the F150 as securing a debt in the amount of

$12,048.47.  On the Statement of Financial Affairs question 3 asked the Debtor to:

> List all payments on loans, installment purchases of goods or services,
> and other debts to any creditor made within 90 days immediately
> preceding the commencement of this case unless the aggregate value
> of all property that constitutes or is affected by such transfer is less
> than $600.

(Debtors' Statement of Financial Affairs, ECF Doc. No. 1, at 8.)  Debtor indicated

that no payments were made and declared that the answers were true and correct.

(Id.)

The Meeting of Creditors was held on January 3, 2012.  On February 8,

2012, Trustee filed a Report of Abandoment of Property, abandoning the real

property in the action, and filed a Report of No Distribution.  (ECF Doc. No. 16.)

Later that same day, February 8, 2012, Trustee withdrew her Report of

Abandoment and Report of No Distribution, indicating they had been filed in error.

The next day, Trustee filed an Application to Employ counsel, which this Court

granted.

On February 2, 2012, First Federal filed its Adversary (No. 12-9009) against

Debtor under Bankruptcy Rule 7001(6).  It argued that a loan Debtor obtained

from First Federal was non-dischargeable under § 523(a)(2).  First Federal argued

that the balance of a promissory note in the amount of $7,747.28, plus interest at a

rate of 11% is non-dischargeable.  It alleged Debtor falsely represented to First

Federal his intention to repay the promissory note.  Debtor obtained the loan and

filed his Chapter 7 bankruptcy petition six days later.

> Proof of the Defendant's false pretenses, false representation and
> fraud with respect to the loan transaction with Plaintiff, is supported
> by the fact that Defendant consulted with bankruptcy counsel prior to
> the execution of said promissory note and obtained credit counseling
> only four days following the execution of the note (see Debtor's
> Certificate of Credit Counseling filed as Docket Entry No. 2).

(Complaint, ECF Doc. No. 1, at ¶ 11, No. 12-9009.)  A scheduling order was

entered in the case which provided a discovery deadline of June 26, 2012.

Trustee filed the Ford Adversary (No. 12-0917) against Ford on February

23, 2012.  The Complaint seeks to avoid a post-petition transfer and provides in

part:

> 8.  To partially secure the monies due Ford Motor Credit, the Debtor
> pledged to Ford Motor Credit the Debtor's interests in a 2005 Ford
> F150.
> 9.  Ford Motor Credit duly perfected its lien on the 2005 Ford F150 by
> recording its lien on the title on August 28, 2008.

3

10.   After the filing of the Chapter 7 Petition, the Debtor paid Ford Motor Credit the amount of $11,400, by way of a check issued from First Federal Credit Union dated November 22, 2011, #185156.

11.   The aforementioned First Federal Credit Union check was procured by the Debtor in the form of a loan to the Debtor from First Federal Credit Union, as evidenced by a Promissory Note from the Debtor to First Federal Credit Union dated circa November 22, 2011.

12.   First Federal Credit Union never had and does not have a lien against the 2005 Ford F150.

13.   First Federal Credit Union has filed a § 523 Complaint against the Debtor, pending in this Court as Adversary #12-9009.  Any and all pleadings and docket in Adversary § 12-9009 are by this reference incorporated herein as if set forth verbatim.

14.   The Trustee has also filed an Objection to the Debtor's exemption claim, relative to the 2005 Ford F150, and the Trustee's allegations in the Objection Exemption are by this reference incorporated herein as if set forth verbatim.

15.   The Ford Motor Credit lien against the 2005 Ford F150 was released at the Linn County Treasurer's office on January 18, 2012.

16.   The lien release and the payment of the money from the Debtor to Ford Motor Credit occurred after the filing of the Chapter 7 Petition, and occurred without any permission or directive or order from this Court.

17.   The money received by Ford Motor Credit and the lien released constituted transfer of property of the Debtor.

18.   The payment of the money from the Debtor to Ford Motor Credit and the release of the lien therefore violated 11 U.S.C. § 549.

19.   The Trustee is entitled to void the payment of the money from the Debtor to Ford Motor Credit, as well as the release of the lien.

(Complaint, ECF Doc. No. 1, No. 12-09017.)

On February 23, 2012, Trustee's counsel filed an Objection to Debtor's

Claim of Exemptions.  The Objection argued that Debtor's schedules show Debtor

had equity in the F150 in the amount of $3,877 ($15,925 - $12,048).  Debtor had

sought to exempt $7,000 of equity in the vehicle under Schedule C, even though he

only had equity in the amount of $3,877.  Trustee concluded that the $7,000

exemption claimed on Schedule C was improper and should be disallowed.

Trustee further alleged that "according to the information from the Linn County

Treasurer, the lien on the 2005 Ford F150 was released on January 18, 2012, i.e.

post-bankruptcy."  (ECF Doc. No. 24, at 2.)  Trustee's Objection further alleges:

> 10.   [T]he Debtor had borrowed money from First Federal Credit
> Union, and via a check dated November 22, 2011, issued by First
> Federal Credit Union, the amount of $11,400 was tendered to "Ford
> Credit," via check #185156.  According to the information from First
> Federal, the "capture date" of the $11,400 check was November 30,
> 2011, i.e. post-petition, and indeed the "posted date" was November
> 30, 2011, both of which are obviously after the Chapter 7 Petition
> filing date and time of November 29, 2011 at 10:02 a.m.
> 11. In other words, the payment from the Debtor to Ford Motor Credit
> Company, LLC occurred post-bankruptcy, and indeed the lien release
> occurred likewise post-bankruptcy.
> 12.   The release of the lien in favor of Ford Motor against the 2005
> Ford F150 and the payment of the $11,400 to Ford occurred after the
> filing of the Chapter 7 Petition filing date and time, and without any
> permission or order from this Court, and indeed without any
> knowledge of the Trustee.
> 13.   The Trustee is therefore in the process of attempting to void the
> payment of the $11,400 from the Debtor to Ford Motor, as well as the
> release of lien, both of which violated 11 U.S.C. § 549.
> 14.   To the extent the Trustee succeeds in her § 549 attempt, by
> operation of § 550 the transfers would be preserved for the benefit of
> the estate.
> 15.   By operation of 11 U.S.C. § 522(g), and bearing in mind that the
> transfer of the monies from First Federal to the Debtor was a
> voluntary transfer, the Debtor is prohibited and disabled by 11 U.S.C.
> § 522(g) from claiming any exemption with respect to the 2005 Ford
> F150.

(Objection to Exemptions, ECF Doc. No. 24, at 2-3.)  Debtor filed a resistance on

March 1, 2012, arguing that the exemption claimed is valid. (ECF Doc. No. 27.)

On April 25, 2012, Debtor filed an amendment to Schedule C, indicating that the

value of the exemption on the F150 was $3,876.53.  (ECF Doc. No. 38.) Trustee

again filed a similar objection to exemption.

The Court held a hearing on the Objection to Exemptions on April 26, 2012.

Attorney Seaton appeared as counsel for Trustee and Attorney Nadler appeared as

counsel for the Debtor.  No other parties appeared.  During the hearing, counsel for

Trustee referenced the two related adversaries.  Trustee argued that $3,876.53 is

the most that Debtor could exempt, but that questions remained as to how much

was proper and the fair market value of the vehicle.  Debtor argues determination

of this issue depends on a ruling in the Ford Adversary.  Debtor argues that if the

Trustee is successful in her action against Ford, to void the payment and release of

lien, then Debtor would be entitled to a $3,876.53 exemption.  If Trustee is

unsuccessful, however, Debtor argues he should be entitled to the full exemption

of $7,000.  The Court took the matter under advisement noting determination of

how the matter relates to the two associated adversaries would likely be necessary.

The Court did, however, note that it appeared as though a determination would

need to be made in the Ford Adversary before a determination of the proper

exemption amount could be made.  Debtor was granted a discharge in the

bankruptcy under 11 U.S.C. § 727 on March 28, 2012.

**THE PARTIES' ARGUMENTS**

Debtor seeks to consolidate: (1) the Trustee's objection to exemption in the

above-captioned Chapter 7 bankruptcy action; (2) the adversary filed by First

Federal against Debtor, No. 12-09009; and (3) the adversary filed by Trustee

against Ford, No. 12-09017.  Debtor argues that the three actions involve the same

set of facts and are interrelated.  Debtor further argues that the benefits of

consolidation include judicial economy, and consolidation would not harm any of

the parties.

Ford and First Federal filed objections to Debtor's Motion to Consolidate.

First Federal objects arguing the three actions are unrelated.  First Federal makes

six arguments in support of its position that consolidation is improper:

> a.    [First Federal's] adversary proceeding against the Debtor
> involves a request that the Court determine the Debtor's obligation to
> Plaintiff is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A)
> and is in no way related to either the legal or factual issues presented
> in the Trustee's Objection to Exemptions or the Trustee's adversary
> complaint to recover a post-petition transfer from Ford Motor Credit;
> b.    First Federal Credit Union has no interest or standing with
> regard to the issues to be litigated between the Trustee and the Debtor
> in the exemption case and the Trustee and Ford Motor Credit in the
> Trustee's adversary case.  Likewise, neither Ford Motor Credit nor the
> Trustee has any interest or standing with respect to the Section 523
> action brought by First Federal Credit Union;
> c.    As explained to the Court at the time of the scheduling
> conference, Plaintiff's counsel believes a consolidation of First

7

Federal's adversary with the matters being pursued by the Trustee will simply cloud, confuse and improperly prejudice the issues and evidence to be presented by First Federal Credit Union in its Section 523 adversary complaint against the Debtor;

d.        First Federal Credit Union should not be subjected to the anticipated discovery and pleadings of the Trustee, the Debtor and Ford Motor Credit, and any consolidation of these matters would simply serve to prejudice First Federal Credit Union in the pursuit of its claims by involving it in unnecessary procedural litigation matters and delay;

e.        The Court has already, on April 30, 2012, entered its final Scheduling Order with respect to First Federal's Section 523 adversary complaint, and such scheduling deadlines should not now be disturbed or changed; and

f.        First Federal Credit Union and the Debtor, by and through their respective council, have already commenced discussion of possible settlement and should be allowed to continue such negotiations unfettered by the anticipated interference that would be caused by the suggested consolidation.

(First Federal Objection, ECF Doc. No. 45, at 1-2.)  During the hearing, First Federal's counsel also objected to not being involved in the Objection to Exemption hearing.  This objection appears counter to First Federal's stated position that the matters are not related.  First Federal resists consolidation of its case but does not resist consolidation of the adversary filed by Trustee against Ford and the Objection to Exemption in the bankruptcy.

Ford objected by joining in First Federal's objection. (Ford Objection, ECF Doc. No. 49.)  Ford argues that the claims in the actions are different and that Ford is not involved in any way with the adversary filed by First Federal against Debtor. Ford believes that none of the actions should be consolidated.

Trustee did not take a position on whether the actions should be consolidated

and did not file any written brief.  Trustee, however, does agree that the Ford

adversary action needs to be resolved before the exemption hearing in the main

bankruptcy.

## DISCUSSION

Banrkuptcy Rule 7042, "Consolidation of Adversary Proceedings; Separate

Trials", provides: "Rule 42 F.R.Civ.P. applies in adversary proceedings."  Federal

Rule of Civil Procedure 42 provides:

> (a)     Consolidation.  If actions before the court involve a common
> question of law or fact, the court may: (1) join for hearing or trial any
> or all matters at issue in the actions; (2) consolidate the actions; or (3)
> issue any other orders to avoid unnecessary cost or delay.
> (b)     Separate Trials.  For convenience, to avoid prejudice, or to
> expedite and economize, the court may order a separate trial of one or
> more separate issues, claims, crossclaims, counterclaims, or third-
> party claims.  When ordering a separate trial, the court must preserve
> any federal right to a jury trial.

Fed. R. Civ. P. 42.  Consolidation lies in the discretion of the trial court.  See

Burlington Transp. Co. v. Josephson, 153 F.2d 372, 378 (8th Cir. 1946).  A court's

"broad discretion in ordering the consolidation of matters is not unbounded, and

we will reverse a district court's decision to consolidate for an abuse of discretion."

Enter. Bank v. Saettele, 21 F.3d 233, 235 (8th Cir. 1994) (citing United States EPA

v. City of Green Forest, 921 F.2d 1394, 1402 (8th Cir. 1990)).

> "[C]onsolidation is permitted as a matter of convenience and economy
> in administration, but does not merge the suits into a single cause, or

> change the rights of the parties, or make those who are parties in one
> suit parties in another." <u>Johnson v. Manhattan Ry.</u>, 289 U.S. 479, 496
> – 97, 53 S. Ct. 721, 727 – 28, 77 L.Ed. 1331 (1933); <u>see also</u> <u>United</u>
> <u>States v. Altman</u>, 750 F.2d 684, 695 (8th Cir. 1984) (consolidated
> suits maintain their separate identities); <u>Kraft, Inc. v. Local Union</u>
> <u>327, Teamsters</u>, 683 F.2d 131, 133 (6th Cir. 1982) (same).

<u>Enter. Bank</u>, 21 F.3d at 235. "The decision to consolidate is entrusted to the sound discretion of the court, but that discretion is not unbounded." <u>Blood v. Givaudan</u> <u>Flavors Corp.</u>, No. C07-0142, 2009 WL 982022, at *2 (N.D. Iowa Apr. 10, 2009). "A common issue of law or fact is a prerequisite to consolidation of cases." <u>Id.</u>

> Consolidation has historically been a 'matter of convenience and
> economy in administration,' and its purpose is to avoid unnecessary
> cost or delay.   Consequently, '[t]he Rule should be prudently
> employed as a valuable and important tool of judicial administration,
> invoked to expedite trial and eliminate unnecessary repetition and
> confusion.'

<u>Id.</u> at *3 (citations omitted). "[C]onsolidation is inappropriate if it leads 'to inefficiency, inconvenience, or unfair prejudice to a party.'" <u>Id.</u>

Consolidation of these three actions will eliminate unnecessary repetition and confusion. The actions further involve common questions of law and fact. <u>See</u> <u>id.</u> At the April 26, 2012 hearing on Trustee's Objection to Exemptions the Court took the matter under advisement, indicating a determination on the issue was conditioned on the outcome of the Ford Adversary. Further, during the hearing on this matter, First Federal objected to not being a party to the April 26, 2012 hearing. Each of the actions involve a common piece of property—the

10

F150—and the same set of facts.  The determination in the Ford Adversary has

effect on the Objection to Exemption based on the doctrine of collateral estoppel.

See Kelly v. Armstrong, 141 F.3d 799, 801 (8th Cir. 1998) ("The doctrine of

collateral estoppel 'has the dual purpose of protecting litigants from the burdens of

relitigating an identical issue . . . and of prompting judicial economy by preventing

needless litigation.'").  The money obtained from First Federal appears to have

been used to satisfy the lien at issue in the Ford Adversary.  Each of the actions

appear to be interrelated.  This interrelationship will help provide the court with a

clear picture of the whole factual record and will not lead to confusion of the

issues.

The Court does not believe consolidation of this action would lead to

prejudice against any parties.  While discovery has, arguably, already closed in the

First Federal adversary, the Court has expressed its willingness to reopen discovery

to accommodate the parties' needs.  Further, consolidation should enhance—not

hinder—the parties' ability to continue to negotiate potential settlements.  These

facts, and the facts discussed in detail above, support this Court's conclusion that

consolidation is appropriate and will lead to increased efficiency and convenience

going forward in these matters.

**WHEREFORE**, Debtor's Motion to Consolidate Cases is **GRANTED**.

The cases shall maintain their individual case numbers but filings in one action

shall be filed simultaneously in all three actions.  A telephonic scheduling hearing

will be held on August 6, 2012, at 1:00 p.m.  Attorney Nadler shall be responsible

for placing the call.


Dated and Entered: July 24, 2012

**THAD J. COLLINS**
**CHIEF BANKRUPTCY JUDGE**